| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------x<br>In Re:<br>      Nicholas F. Pisculli, Jr.<br><br>                    Debtor<br>----------------------------------------------------------------x<br>T.S. Haulers, Inc.,<br><br>                    Plaintiff,<br>      - against -<br><br>Nicholas F. Pisculli, Jr.<br><br>                    Defendant.<br>----------------------------------------------------------------x<br>Ranco Sand & Stone Corp.,<br><br>                    Plaintiff,<br>      - against -<br><br>Nicholas F. Pisculli, Jr.<br><br>                    Debtor.<br>----------------------------------------------------------------x | **NOT FOR PUBLICATION**<br><br>Case No. 805-89678 - reg<br><br>Chapter 7<br><br><br><br><br>Case No. 806-8335 - reg<br><br><br><br><br><br><br><br>Case No. 806-8337 - reg |

**MEMORANDUM DECISION**

      Before the Court is an objection by the Plaintiffs, T.S. Haulers, Inc. ("T.S.") and Ranco Sand & Stone Corp. ("Ranco Sand") (collectively, the "Plaintiffs"), to Debtor's discharge. The Plaintiffs contend that the Court should deny the Debtor's discharge pursuant to section 727(a)(2)(B) of the Bankruptcy Code because the Debtor transferred proceeds from the sale of certain assets with the intent to hinder, delay or defraud Plaintiffs. For the reasons that follow, the Court finds in favor of the Plaintiffs.

*Background*

      Prior to the petition date, the Debtor had conducted business under the trade name of LJC

Truck Service and was the owner and sole shareholder of LJC Truck Service Inc. ("LJC"), J.R. Materials Corp. ("J.R."), and A.N. Leasing Corp. ("A.N.") (collectively, LJC, J.R. and A.N. are referred to herein as the "Businesses"). LJC and J.R. were in the business of carting sand and gravel. A.N. was formed solely to hold title to the trucks that were used by LJC and J.R. During the period of December 2001 through June 2002, the Businesses purchased sand and gravel from T.S. Subsequently, from September 2003 through June 2005, the Businesses purchased grit and sand from Ranco Sand.

On October 15, 2005, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. In his Schedules the Debtor listed T.S. as an unsecured creditor with a claim in the amount of $174,704.00 and listed Ranco Sand as an unsecured creditor with a claim in the amount of $439,812.97.[1]

On or about March 13, 2006, while the Chapter 13 petition was pending, the Debtor sold three (3) trailers and three (3) trucks owned by A.N. (the "Assets") to All Service Funding Corporation for the sum of $247,500.00 (the "Sale"). From the gross sale proceeds $76,189.09 was used to satisfy liens upon the three trailers, leaving a balance of $171,310.91. Of the $171,310.91 remaining balance (the "Proceeds" or "Sale Proceeds"), $14,281.09 was paid to Suffolk Manufacturing Company; $77,029.82 was paid to Island Leasing Services ("Island Leasing"), and the remaining $80,000 was paid to Debtor's wife (collectively referred to herein as the "Transfers").

On April 12, 2006, an order was entered converting the Debtor's case to a case under Chapter 7. Robert Pryor, Esq. was appointed as the Chapter 7 Trustee (the "Chapter 7 Trustee").

---

[1] In the complaint, T.S. alleged that the Debtor owed $319,651.60.

2

Thereafter, the Debtor turned over to the Chapter 7 Trustee $14,281.09 representing the portion of the Proceeds previously paid to Suffolk Manufacturing Company.

In August 2006, the Plaintiffs filed these complaints objecting to Debtor's discharge under section 727(a)(2)(B) and the dischargeability of the Plaintiff's claims under section 523(a)(4) of the Bankruptcy Code. On September 15, 2006, the Debtor filed an answer in which he denied the allegations contained in the complaints and asserted affirmative defenses. The Debtor asserted that all the Sale Proceeds were used to pay "debts." Debtor asserted that the $77,029.82 paid to Island Leasing was on account of debts J.R. owed to Island Leasing for payroll services. The $80,000 paid to Debtor's wife represented payment for an undocumented obligation by the Debtor to his spouse on account of her having used the proceeds of a refinancing of her own house to satisfy corporate debts of J.R.

By Joint Pre-Trial Memorandum filed with the Court on November 20, 2007, the Plaintiffs withdrew the first and second causes of action in both complaints. The sole remaining cause of action in both complaints is the third cause of action under 11 U.S.C. § 727(a)(2)(B). On January 13, 2009, this Court held a trial on the third cause of action. The following constitutes the Court's findings of fact and conclusions of law as mandated by Bankruptcy Rule 7052.

### *Legal Analysis*

Pursuant to the remaining cause of action, Plaintiffs seek to bar the Debtor's discharge under section 727(a)(2)(B). The Plaintiffs assert that the Debtor as sole shareholder and officer of A.N. sold all of the assets of A.N. and after paying all of A.N.'s creditors, rather than turning the remaining Sale Proceeds over to the Chapter 13 or to the subsequently - appointed Chapter

7 trustee, disbursed the Proceeds to his wife and creditors of his other Businesses with the intent to hinder, delay or defraud T.S. and Ranco Sand. The transfer of these Proceeds constituted a post petition transfer of property of the estate and the Debtor's discharge should be denied pursuant to 11 U.S.C. §727(a)(2)(B).

Section 727(a)(2) provides that the debtor shall not receive a discharge if he,

> with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed
> (B)     property of the estate, after the date of the filing of the petition.

11 U.S.C. §727(a)(2)(B).

Objections to discharge are construed liberally in favor of the debtor and strictly against the creditor. *In re Bodenstein*, 168 B.R. 23, 27 (Bankr. E.D.N.Y 1994). A party seeking denial of discharge under this section must prove four elements by a preponderance of the evidence: 1) a disposition, such as a transfer or concealment, of property 2) that belonged to the debtor's estate 3) after the filing of the petition 4) with a subjective intent to hinder delay, or defraud. *See id*.

*Element 2: Property of the Estate*

At the close of the Plaintiff's case-in-chief, the Debtor moved for a directed verdict, arguing that Plaintiffs failed to establish the second element of the claim, that the property involved is property of the estate. The Debtor asserted that the Sale Proceeds that were transferred belonged to the Debtor's corporation, A.N., and not to the Debtor. Accordingly, the Debtor maintained that despite being the sole shareholder of A.N. and despite the fact that all of the creditors of A.N. had been paid, he only had a derivative interest in the Proceeds, which

is insufficient to support a denial of discharge. The Plaintiffs countered that the Debtor as the sole shareholder of A.N. is deemed to have had a direct interest in the Proceeds because he treated the Businesses, including specifically A.N., as an extension of himself and disregarded any semblance of separateness among the various Businesses.

The Court's consideration of Plaintiffs' motion is the equivalent of a judgment as a matter of law under Fed. R. Civ. P. 50(a), applicable to non-jury bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7052(c). In pertinent part, Rule 52(c) states that:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

The Court denied the Debtor's motion stating that property of a corporation can be found to be property of debtor's estate. After the parties litigated the issues fully, the Court finds that the facts in this case support a finding that the Sale Proceeds that were transferred are property of the estate.[2]

Ordinarily, the stock of a debtor's closely owned corporation, and consequently the value of its assets, after payment of the corporation's debts, is property of a debtor's bankruptcy estate. *In re Friskney*, 282 B.R. 250 (Bankr. M.D. Fla. 2002); *See In re Adams*, 31 F.3d 389,

---

[2] Section 541 of the Code defines property of the estate and provides in pertinent part:
(a) the commencement of a case under 301, 302, 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

  (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interest of the debtor in property as of the commencement of the case.

11 U.S.C. § 541.

394 (6th Cir. 1994) (transfer of property of a corporation wholly owned and controlled by the debtor was transfer of property of the debtor); *In re Hoffman*, No. 05-90023 (Bankr. Ala. April 20, 2006), *aff'd* (Bankr. 9th Cir. BAP May 9, 2007) (transfer of property of the debtor's corporation which had grossly inadequate capital to the wife's corporation for a promise to pay taxes constituted a transfer of the debtor's property which warranted denial of debtor's discharge); *In re Hill*, 265 B.R. 296, 300 (Bankr. M.D. Fla. 2001) (the sole asset of a closely held corporation owned by the debtor was property of the estate such that the post petition transfer of the asset was avoidable pursuant to 11 U.S.C. §549); *In re Hollingsworth*, 224 B.R. 822, 829 (Bankr. M.D. Fla. 1998) (airplane which was owned by debtor's corporation and leased at a commercially unreasonable rate was property of the debtor for purposes of denying debtor's discharge under 11 U.S.C. §727(a)(2)).

      The Court finds that the Debtor had more than a mere derivative interest in the transferred property. Once the Debtor liquidated the Assets of A.N., the Debtor had a direct interest in the Proceeds. *See In re Colonder*, 147 B.R. 90, 93 (citing *In re Thurman,* 901 F.2d 839, 841 (10th Cir. 1990) (Congress intended to limit the reach of section 727(a)(2) only to those transfers of property in which the debtor has a direct proprietary interest.). The Debtor was the sole shareholder and owner of A.N. The Debtor directed the Sale of the Assets of A.N. and paid off the remaining obligations of A.N. Debtor and his wife testified that once the notes on A.N.'s trucks were paid, A.N. had no other debts and was no longer conducting any business. Having liquidated the Assets, equity for the shareholders was created and the Debtor as the corporation's owner and direct beneficiary had full control over the Proceeds. *See In re Hart,* No. 98-2216 (W.D.N.Y. May 4, 1999) (where debtor was the majority shareholder of the

corporation, he had no equity in the corporation's assets because the corporation was insolvent).[3]

### *Element 4: Fraudulent Intent*

Under the other contested element of section 727(a)(2), element four, the Plaintiffs had the burden of demonstrating to the Court that the Debtor acted with the intent to hinder, delay

---

[3] The Debtor also countered the Plaintiffs' alter ego argument asserting that while he treated all the Businesses as one, he did not commingle the transactions of the Businesses with his own personal transactions. Having found that upon liquidation of the corporation's Assets, the Debtor had a direct interest in the Proceeds from the liquidation, the Court does not need to reach Debtor's alter ego rebuttals. However, even if the Court were to consider it, there is adequate evidence for piercing the corporate veil here. In this case the Debtor treated all the Businesses as an extension of himself preventing creditors from reaching certain assets of the Businesses. *See American Fuel Corp. v. Utah Energy Development Co.*, 122 F.3d 130 (2d Cir. 1997) (in order to pierce the corporate veil, plaintiffs must demonstrate that owner has exercised control over corporation to commit a fraud or other wrong that results in an unjust loss or injury).

Debtor regularly transferred funds from J.R. or LJC to pay A.N.'s note obligations. A.N. did not receive lease payments from LJC or J.R. for the use of its trucks. A.N. also paid Island Leasing over $77,000 for employees that J.R. employed. In addition, the Debtor assigned portions of personal bills to be paid by the Businesses without any real basis for the amount assigned. The Debtor's wife paid mortgage and grocery bills with money withdrawn from LJC. The Debtor's wife also paid debts of the Businesses out of her own account and subsequently deposited income from the Businesses into her own account. There were no records maintained, however, of loans or agreements between the Debtor's wife and the Businesses or a clear record of how much the wife paid to corporate creditors. In addition, instead of A.N. having an account into which the $80,000 Sale Proceeds were deposited, the Proceeds were deposited into the Debtor's wife's personal bank account. The Debtor's wife had used over $30,000 of these funds to pay personal expenses. Moreover, the Debtor testified that the reason A.N. paid for J.R.'s debt to Island Leasing was because the Debtor believed that it was he in the end who leased the employees from Island Leasing and that he needed to pay all such obligations. In addition, even though he was aware that it was the Businesses that bought materials from Plaintiffs and not him personally, he believed that he had an obligation for the debt.

The testimony also belies Debtor's assertion that there was no fraud or lack of good faith based on the Debtor's decision to ignore the corporate formalities, as required to pierce the corporate veil. The Debtor's wife testified that the reason they used her own bank account for Business transactions instead of the Business accounts was to prevent judgment creditors from freezing the corporate assets and obtaining funds from those accounts.

or defraud them. The Debtor concedes that he transferred the Proceeds but argues that the Plaintiffs failed to prove that he did so with an actual intent to hinder delay or defraud T.S. and Ranco. The Debtor argues that because he used the proceeds to pay "debts" he could not be found to have acted with the requisite intent required by the statute. The Debtor asserts that $77,029.82 of the Proceeds was paid to Island Leasing on account of a debt J.R. owed to Island Leasing for payroll services, and $80,000 was paid to Debtor's wife on account of corporate debts Debtor's wife had previously paid with monies she received from refinancing her home.

Absent a specific intent to defraud creditors, a discharge should not be denied. *Bank of Pa. v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir. 1976); *Feder v. Goetz*, 264 F. 619 (2d Cir. 1920). A transfer in good faith is one not made with actual intent to defraud; constructive intent is not sufficient to bar a discharge. *In re Simon*, 197 F. Supp. 301 (D.C.N.Y. 1961), aff'd sub nom. *Simon v. Agar*, 299 F.2d 853 (2d Cir. 1962). Whether the debtor had the necessary wrongful intent usually turns on the credibility and demeanor of the debtor, and is thus a question of fact. *Essenfeld v. Schultz*, 239 B.R. 664 (E.D.N.Y. 1999). Because a debtor rarely gives direct evidence of fraudulent intent, intent to defraud a creditor can be proven by circumstantial evidence. *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1583 (2d Cir. 1983). Circumstances indicating fraud may include such "badges of fraud" as:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id*. In *Kaiser*, the court found that the transfer of property by the debtor to his spouse while insolvent, but retaining the use and enjoyment of the property, was a classic badge of fraud. *Id*. The shifting of assets by the debtor to a corporation wholly controlled by him was another badge of fraud. *Id*.

There are several badges of fraud present in this case. First, there is no indication of adequate consideration for the Transfer of the Proceeds to Debtor's wife. Debtor alleges that his wife received $80,000 of the Sale Proceeds because she had previously paid over $100,000 to corporate creditors from funds she received from refinancing her own house. He also alleges that the wife used the $80,000 to pay debts of the Businesses. However, the creditors that the wife allegedly paid with her refinancing funds were said to be creditors of J.R. not of the Debtor or A.N. Moreover, it appears from the record that the Debtor's wife used over $30,000 of the Proceeds to pay her own expenses. The second badge of fraud is clearly present in this case; the Proceeds were transferred to Debtor's wife who is an insider, and to Island Leasing, a company which employs Debtor's wife. Third, while Debtor did not retain possession of the Proceeds, he retained a benefit from them. Debtor's wife used the Proceeds to make payments on the house occupied by both the Debtor and his wife. The proceeds were also used to pay other personal expenses of both the Debtor and his wife.

An indication of the fourth badge is the Debtor's financial condition before and after the Transfer. Prior to the Transfer, the Businesses owed certain obligations. The Debtor testified that he felt he personally had to pay the debts of all his Businesses. The debts the Debtor paid with the Proceeds were debts owed by J.R to Island Leasing and personal expenses of his wife. As a result of the Transfer of the Proceeds to Island Leasing and his wife, the Debtor

intentionally selected to satisfy those particular obligations to the detriment of his personal creditors. If not for the Transfer, the Proceeds would have flowed to the Debtor and then his scheduled creditors via the Trustee, and the Debtor's Businesses and wife would continue to be obligated to their creditors. Last and perhaps most telling, Debtor and his wife testified that the reason they had deposited funds into the wife's account was to "prevent judgement creditors from freezing the accounts and receiving the money."

The Debtor argues that transfers made by a debtor to satisfy creditors and to save a business are not fraudulent. *In re Richter*, 57 F.2d 159 (2d Cir. 1932); *In re Gould*, 31 F. Supp. 793 (D.C. Conn. 1939), *aff'd*, 110 F.2d 528 (2d Cir. 1940) (the intent to prefer creditors is not equivalent to the intent to hinder, delay or defraud creditors). However, the Debtor here cannot avail himself of such a position because there was no business to save. At the time of the Transfer, A.N. no longer conducted any business, had no bank account, and did not have any liabilities or additional income. In addition, the creditors paid here or preferred were not creditors of the Debtor or of A.N.

### *Conclusion*

The Court finds that the Proceeds that were transferred were property of the Debtor's estate and that Debtor transferred these Proceeds with the intent to hinder, delay or defraud the Plaintiffs. Accordingly, Debtor's discharge is denied. Judgment consistent with this memorandum decision will be entered.

Central Islip, NY　　　　　　　　　　　　　　　　　　　　　　　*/s/ Robert E. Grossman*
March 4, 2009　　　　　　　　　　　　　　　　　　　　　　　　Robert E. Grossman